**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MARK WOLFKIEL and KELLI MAJIROS, individually and on behalf of all others similarly situated, | Case No. 1:13-cv-07133 |
| *Plaintiffs*, | Honorable James B. Zagel |
| v. | |
| INTERSECTIONS INSURANCE SERVICES INC., an Illinois corporation, and OCWEN LOAN SERVICING, LLC, a Delaware corporation, | |
| *Defendants*. | |

**FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiffs Mark Wolfkiel and Kelli Majiros bring this First Amended Class Action Complaint against Defendants Intersections Insurance Services Inc. and Ocwen Loan Servicing, LLC (collectively, "Defendants") to stop Defendants' practice of making unsolicited phone calls to the cellular and landline telephones of consumers nationwide and to obtain redress for all persons injured by their conduct. Plaintiffs, for their First Amended Class Action Complaint, allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

**NATURE OF THE ACTION**

1.      Intersections Insurance Services Inc. ("Intersections") is a provider of subscription-based consumer membership programs, including credit management programs, identity theft programs, and medical discount programs, among others.

2.      Defendant Ocwen Loan Servicing, LLC ("Ocwen") is a mortgage servicing and

asset management company and close business partner of Intersections.

3. Defendants repeatedly made (or directed to be made on their behalf) unsolicited telephone calls to Plaintiffs and the other members of the putative Classes' telephones for the express purpose of selling Intersections' products and services, all in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. ("TCPA").

4. By making the telephone calls at issue in this First Amended Complaint, Defendants caused Plaintiffs and the members of the Classes actual harm, including the aggravation and nuisance that necessarily accompanies the receipt of unsolicited and harassing telephone calls and the monies paid to their phone carriers for the receipt of such telephone calls.

5. The TCPA was enacted to protect consumers from unsolicited phone calls exactly like those alleged in this case. In response to Defendants' unlawful conduct, Plaintiffs filed the instant lawsuit and seek an injunction requiring Defendants to cease all unsolicited telephone calling activities and an award of statutory damages to the members of the Classes under the TCPA, together with costs and reasonable attorneys' fees.

**PARTIES**

6. Plaintiff Mark Wolfkiel is a natural person and citizen of the State of Nevada.

7. Plaintiff Kelli Majiros is a natural person and citizen of the State of Pennsylvania.

8. Intersections Insurance Services Inc. is a corporation organized and existing under the laws of the State of Illinois with its principal place of business located at 315 West University Drive, Arlington Heights, Illinois 60004. Defendant Intersections Insurance Services regularly does business throughout the United States, the State of Illinois, and in this District.

9. Ocwen Loan Servicing, LLC is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 1661 Worthington

Road, Suite 100, West Palm Beach, Florida 33409. Defendant Ocwen Loan Servicing regularly does business throughout the United States, the State of Illinois, and in this District. Defendant Ocwen's contacts with this District include transacting business with its close business partner, Defendant Intersections.

## JURISDICTION AND VENUE

10. The Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the federal Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*.

11. The Court has personal jurisdiction over Defendants and venue is proper in this District because Defendant Intersections resides in this District and both Defendants transact significant amounts of business within this District, direct telephone calls here, solicit and contact customers here, and enter into consumer and business contracts here.

## COMMON FACTUAL ALLEGATIONS

12. Defendant Ocwen engages in the servicing of mortgage loans.

13. Defendant Intersections provides subscription-based consumer membership services, including identity theft protection, healthcare discount services, as well as credit monitoring programs.

14. Defendants engage in joint telemarketing efforts to increase consumer sales of Defendant Intersections' products and services and to jointly benefit from those sales through a revenue sharing agreement. Defendants specifically telemarket to consumers whose mortgage has been transferred to or is serviced by Ocwen. However, in Defendants' zeal to solicit new customers, they have failed to obtain the necessary consent to make such telemarketing calls.

15. Defendants act in direct concert to solicit new customers through two avenues: (1)

calls placed by Ocwen itself to sell Defendant Intersections' services and (2) calls placed by Defendant Intersections under the guise of calling as Ocwen or on Ocwen's behalf.

16. Specifically, Defendant Ocwen makes telemarketing calls to consumers whose mortgages it services, but who have never consented to be called by Ocwen (or Defendant Intersections) for telemarketing purposes. The calls are placed for the purpose of selling Intersections' identify theft, healthcare discount, or other insurance and membership programs.

17. Likewise, Defendant Ocwen provides the contact information of consumers whose mortgages it services to Defendant Intersections without obtaining consumers' express consent to do so. In turn, Defendant Intersections places telemarketing calls to those consumers to sell their own membership programs, but, when a consumer answers the call, claims to either be calling as Ocwen or "on behalf of" Ocwen. This deceptive tactic is utilized to gain the trust of the call recipient by using a name associated with their mortgage.

18. In addition to this barrage of unwanted calls, consumers who expressly request that the calls from Defendants stop continue to receive unwanted telemarketing calls, even after repeated and emphatic requests. Likewise, Defendants make calls to consumers who have taken affirmative steps to avoid calls from all telemarketers by placing their residential and/or wireless telephone numbers on the National Do Not Call Registry.

19. In fact, online complaint websites are filled with dozens of complaints regarding the receipt of unwanted calls from or on behalf of Defendants, in addition to complaints noting that requests to cease go unheeded.

20. In making the calls at issue in this First Amended Complaint, Defendants utilized an automatic telephone dialing system. Specifically, the hardware and software used by Defendants has the capacity to generate and store random numbers, or store lists of telephone

4

numbers, and to dial those numbers, *en masse*, in an automated fashion without human intervention. Defendants' automated dialing equipment also is, or includes features substantially similar to, a predictive dialer, meaning that it is capable of making numerous phone calls simultaneously and automatically connecting answered calls to then available telemarketers and disconnecting the rest. Defendants' use of an automatic telephone dialing system is further supported by the fact that when Plaintiff Wolfkiel and other consumers answered calls from Defendants, they were often greeted by nothing but dead air, indicating that the dialer that had placed the call had hung up prior to the call being answered.

21. Defendants knowingly made these telemarketing calls without the prior express consent of the call recipients and knowingly continued to call them after requests to stop. Defendant Ocwen abused its access to consumers' contact information, obtained through unrelated acquisitions, not only by placing telemarketing calls to Plaintiffs and members of the putative Classes, but through the sharing of such contact information with Defendant Intersections. In so doing, Defendants not only invaded the personal privacy of Plaintiffs and members of the putative Classes, but also intentionally and repeatedly violated the TCPA with impunity.

### FACTS SPECIFIC TO PLAINTIFF WOLFKIEL

22. Plaintiff Wolfkiel had his mortgage purchased by Defendant Ocwen in or around 2012. He had obtained his original mortgage in 2003.

23. Plaintiff Wolfkiel obtained his current cellular telephone number in approximately 2010.

24. At no time during the purchase of his mortgage, or anytime thereafter, did Plaintiff Wolfkiel provide Defendant Ocwen consent to make telemarketing calls to his cellular

5

telephone number, nor did he provide permission to Defendant Ocwen or Defendant Intersections directly, for Defendant Intersections to make telemarketing calls to him.

25. Despite the lack of consent, starting in March 2012, Defendant Ocwen, on Intersections' behalf, began placing calls to his cellular telephone from the phone number (800) 746-2936.

26. Because Plaintiff did not recognize the telephone number, he initially did not answer the calls. However, because the calls persisted on a nearly daily basis and Plaintiff found them to be a harassing invasion of his privacy, on or around April 12, 2012, Plaintiff Wolfkiel called (800) 746-2936 to inquire about the source and reason for the calls. The phone number led directly to Defendant Ocwen. When Plaintiff asked about the calls, the telemarketer informed him that the purpose of the calls was to offer him Defendant Intersections' identify theft membership service.

27. As Plaintiff had not consented to receive the calls and had no interest in the offered service, Plaintiff expressly told the telemarketer that he did not want to receive any more telemarketing calls.

28. However, Plaintiff continued to receive constant and regular calls from (800) 746-2936, the majority of which he did not answer because he recognized the number on his cell phone's caller ID.

29. On or around June 5, 2012, Plaintiff again called (800) 746-2936 in an effort to stop the calls. Plaintiff again requested that he no longer receive telemarketing calls.

30. Regardless, the calls continued unabated for months. On December 6, 2012, Plaintiff answered a call from (800) 746-2936 on which the telemarketer attempted to sell him Defendant Intersections' identify theft service. As before, Plaintiff stated that he was not

6

interested and that he did not want to receive further calls.

31. In direct contradiction to his requests, the calls continued.

32. Defendants were and are aware that the above-described telephone calls were and are being made to consumers who had not consented to receive them.

**FACTS SPECIFIC TO PLAINTIFF MAJIROS**

33. Plaintiff's landline telephone has been listed with the National Do Not Call Registry since August 24, 2010.

34. Plaintiff's mortgage was transferred to Defendant Ocwen in March of 2013.

35. Starting in or around July 2013, Plaintiff began receiving telephone calls on her landline telephone every weekday, and at times, two to three times per day, from the phone number (847) 368-7290. The incoming calls appeared on Plaintiff's caller ID as "INTERSECTION IN", which she later determined to reference Intersections Insurance Services. When the calls reached Plaintiff's voicemail, the caller would not leave a message.

36. On or around August 1, 2013, Plaintiff answered the phone, demanded that the caller cease calling her, and informed the telemarketer that her number was registered with the National Do Not Call Registry. However, before she could complete her request, the telemarketer abruptly hung up the phone and ended the call. When Plaintiff attempted to call the number back, she was greeted with a recording stating that the number was private and would not receive incoming calls.

37. The very next day, Plaintiff received several more calls. When Plaintiff answered, the telemarketer insisted on speaking to her husband and would not tell her who was calling or the purpose of the call. When Plaintiff requested that her number be added to a internal do not call list and stated that she was on the National Do Not Call Registry, the caller again hung up.

7

38. *Only two hours later*, Defendant Intersections again placed a call to Plaintiff, but, when asked, this telemarketer informed her that the purpose of the calls was to sell "Ocwen's Optional Medical Discount Program." Plaintiff again requested that her number be added to the do not call list. The telemarketer provided Plaintiff with the telephone number (800) 332-2853 to find out more information about "Ocwen's Optional Medical Discount Program."

39. The number (800) 332-2853 is directly associated with "AdvantageCare Plus" (http://www.advantagecareplus.com/enroll.asp), a website registered to Intersections, Inc., the parent company of Defendant Intersections Insurance Services. Likewise, the AdvantageCare Plus website states: "AdvantageCare Plus is a healthcare discount service developed and marketed by Intersections Insurances Services Inc. (formerly Chartered Marketing Services, Inc.), which has been in business since 1981, providing membership services to over one million Americans. Our services have been sold in cooperation with many of the largest banks, mortgage companies and other financial institutions in the country." It further states: "Intersections Insurances Services Inc. is an Intersections Inc. company located in a suburb of Chicago."

40. Plaintiff never consented to, requested, or otherwise desired or permitted Defendants to make telemarketing calls to her telephone for any purpose.

41. Defendants were and are aware that the above-described telephone calls were and are being made to consumers without those consumers' prior express consent and that calls were being made to consumers who had expressly requested to no longer receive them.

**CLASS ALLEGATIONS**

42. Plaintiff Wolfkiel brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of himself and a class defined as follows:

8

**Cell Phone (No Consent) Telemarketing Class:** All individuals in the United States (1) whose mortgage is held or serviced by Defendant Ocwen; (2) who received a telephone call; (3) on a cellular telephone number; (4) promoting Defendant Intersections' products or services; (5) who never consented to receive telemarketing calls promoting Defendant Intersections' products or services.

Plaintiff Wolfkiel brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of himself and a class defined as follows:

**Cell Phone (Revocation) Telemarketing Class:** All individuals in the United States (1) whose mortgage is held or serviced by Defendant Ocwen; (2) who received a telephone call; (3) on a cellular telephone number; (4) promoting Defendant Intersections' products or services; (4) who expressly requested that he or she no longer receive telemarketing calls promoting Defendant Intersections' products or services; and (5) thereafter received an additional telephone call to his or her cellular telephone promoting Defendant Intersections' products or services.

Plaintiff Majiros brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of herself and a class defined as follows:

**Do Not Call Registry Class:** All individuals in the United States (1) who had his or her telephone number(s) registered with the National Do Not Call Registry; (2) who never consented to receive telemarketing calls promoting Defendant Intersections' products or services; and (3) who received more than one telephone call promoting Defendant Intersections' products or services; (4) within any 12-month period.

Excluded from the Classes are 1) Defendants, Defendants' agents, subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current and former employees, officers, and directors, 2) the Judge or Magistrate Judge to whom this case is assigned and the Judge's or Magistrate Judge's immediate family, 3) persons who execute and file a timely request for exclusion, 4) the legal representatives, successors, or assigns of any such excluded person; and 5) Plaintiffs' counsel and Defendants' counsel.

43. **Numerosity**: The exact size of the Classes is unknown and not available to Plaintiffs at this time, but it is clear that individual joinder is impracticable. On information and

9

belief, Defendant has made telephone calls to thousands of consumers who fall into the definitions of the Classes. Members of the Classes can be identified through Defendants' records.

44. **Adequate Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the Classes, and they have retained counsel competent and experienced in complex class actions. Plaintiffs have no interests antagonistic to those of the Classes, and Defendants have no defenses unique to Plaintiffs.

45. **Typicality**: Plaintiffs' claims are typical of the claims of other members of the Classes, in that Plaintiffs and the members of the Classes sustained damages arising out of Defendants' uniform wrongful conduct and unsolicited telephone calls.

46. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiffs and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

   (a) whether Defendants' conduct constitutes a violation of the TCPA;

   (b) whether the equipment Defendants used to make telephone calls to members of the Cell Phone (No Consent) Class and the Cell Phone (Revocation) Class was an automatic telephone dialing system as contemplated by the TCPA;

   (c) whether Defendants systematically made telephone calls to members of the Cell Phone (No Consent) Class and the Do Not Call Registry Class who did not previously provide Defendants with their prior express consent to receive such telephone calls;

 (d) whether Defendants made telephone calls to members of the Cell Phone (Revocation) Class after they requested to no longer receive telephone calls from them;

 (e) whether Defendants systematically made telephone calls to members of the Do Not Call Registry Class whose telephone numbers were registered with the National Do Not Call Registry;

 (e) whether members of the Classes are entitled to treble damages based on the willfulness of Defendants' conduct.

47. **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. The damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendants' misconduct. Even if members of the Classes could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this First Amended Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

## COUNT I

**Violation of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii)
(On behalf of Plaintiff Wolfkiel, the Cell Phone (No Consent) Class,
and the Cell Phone (Revocation) Class)**

48. Plaintiff Wolfkiel incorporates by reference the foregoing allegations as if fully set forth herein.

49. Defendants and/or their agents made unsolicited telephone calls to cellular telephone numbers belonging to Plaintiff Wolfkiel and other members of the Cell Phone (No Consent) Class without their prior express consent to receive such calls.

50. Defendants and/or their agents also made unsolicited telephone calls to cellular telephone numbers belonging to Plaintiff Wolfkiel and other members of the Cell Phone (Revocation) Class after they expressly requested to no longer receive telephone calls from Defendants. As such, the calls made to Cell Phone (Revocation) Class members after they revoked any purported consent were made without Plaintiff Wolfkiel's and the Cell Phone (Revocation) Class members' prior express consent to receive such calls.

51. Defendants made the telephone calls, or had them made on their behalf, using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator and the capacity to dial such numbers. The telephone dialing equipment was computerized and automatically accessed Defendants' servers and databases as part of the calling process.

52. Defendants and/or their agents utilized equipment that made, or had made on their behalf, the telephone calls to Plaintiff Wolfkiel and other members of the Cell Phone (No Consent) Class and Cell Phone (Revocation) Class simultaneously and without human intervention. The telephone dialing equipment utilized by Defendants dialed numbers from a list,

or dialed numbers from a database of telephone numbers, in an automatic and systematic manner.

53. By making, or having made on their behalf, the unsolicited telephone calls to Plaintiff Wolfkiel and the Cell Phone (No Consent) Class members' cellular telephones without their prior express consent, and by utilizing an automatic telephone dialing system to make those calls, Defendants have violated 47 U.S.C. § 227(b)(1)(A)(iii).

54. By making, or having made on its behalf, the unsolicited telephone calls to Plaintiff Wolfkiel and the Cell Phone (Revocation) Class members' cellular telephones after the requests were made to stop such calls (thereby revoking any purported consent), and by utilizing an automatic telephone dialing system to make those calls, Defendants have violated 47 U.S.C. § 227(b)(1)(A)(iii).

55. As a result of Defendants' unlawful conduct, Plaintiff Wolfkiel and the members of the Cell Phone (No Consent) Class and the Cell Phone (Revocation) Class suffered actual damages in the form of monies paid to receive the unsolicited telephone calls on their cellular phones and under 47 U.S.C. § 227(b)(3)(B) are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the TCPA.

56. Should the Court determine that Defendants' conduct was willful and knowing, the Court may, pursuant to 47 U.S.C. § 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff Wolfkiel and the other members of the Cell Phone (No Consent) Class and the Cell Phone (Revocation) Class.

## COUNT II

### Violation of the TCPA, 47 U.S.C. § 227(c)(5)
### (On behalf of Plaintiff Majiros and the Do Not Call Registry Class)

57. Plaintiff Majiros incorporates by reference the foregoing allegations as if fully set forth herein.

58. 47 U.S.C. §227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may," bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

59. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "No person or entity shall initiate any telephone solicitation" to "…(2) A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

60. 47 C.F.R. § 64.1200 (e), provides that § 64.1200 (c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,'" which the Report and Order, in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.

61. 47 C.F.R. § 64.1200(d) further provides that "No person or entity shall initiate

any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entitles making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. . . .
>
> (4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.
>
> (5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.
>
> (6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made."

62. Defendants violated § 64.1200 (c) by initiating telephone solicitations to wireless and residential telephone subscribers such as Plaintiff Majiros and the Do Not Call Registry

15

Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government. These consumers requested not to receive calls from Defendants, as set forth in § 64.l200 (d)(3).

63. Defendants and/or their agents made more than one unsolicited telephone call to Plaintiff Majiros and members of the Do Not Call Registry Class within a 12-month period without their prior express consent to receive such calls. Plaintiff Majiros and members of the Do Not Call Registry Class never provided any form of consent to receive telephone calls from Defendants.

64. Defendants violated § 64.1200 (d) by initiating calls for telemarketing purposes to residential and wireless telephone subscribers, such as Plaintiff Majiros and the Do Not Call Registry Class, without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them.

65. Defendants violated 47 U.S.C. § 227(c)(5) because Plaintiff Majiros and the Do Not Call Registry Class received more than one telephone call within a 12-month period made by or on behalf of the Defendants in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendants' conduct as alleged herein, Plaintiff Majiros and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are each entitled, *inter alia*, to receive up to $500 in damages for such violations of § 64.1200.

66. To the extent Defendants' misconduct is determined to be willful and knowing, the Court should, pursuant to § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Mark Wolfkiel and Kelli Majiros, individually and on behalf of the Classes, pray for the following relief:

1. An order certifying the Classes as defined above, appointing Plaintiff Mark Wolfkiel and Kelli Majiros as the representatives of the respective Classes as stated above, and appointing their counsel as Class Counsel;

2. An award of actual and statutory damages;

3. An injunction requiring Defendants to cease all unsolicited telephone calling activities, and otherwise protecting the interests of the Classes;

4. An award of reasonable attorneys' fees and costs; and

5. Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiffs request a trial by jury of all claims that can be so tried.

Dated: November 14, 2013    Respectfully Submitted,

**MARK WOLFKIEL and KELLI MAJIROS**, individually and on behalf of Classes of similarly situated individuals,

By: /s/ Christopher L. Dore
     One of Plaintiffs' Attorneys

Jay Edelson (jedelson@edelson.com)
Rafey S. Balabanian (rbalabanian@edelson.com)
Benjamin H. Richman (brichman@edelson.com)
Christopher L. Dore (cdore@edelson.com)
EDELSON LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone: (312) 589-6370

Stefan Coleman, Esq. (law@stefancoleman.com)
LAW OFFICES OF STEFAN COLEMAN, LLC
201 South Biscayne Boulevard, 28th Floor
Miami, Florida 33131
Telephone: (877) 333-9427

## **CERTIFICATE OF SERVICE**

I, Christopher L. Dore, an attorney, hereby certify that on November 14, 2013, I served the above and foregoing ***First Amended Class Action Complaint***, by causing a true and accurate copy of such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system, on this the 14th day of November 2013.

/s/ Christopher L. Dore