UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARK WOLFKIEL and KELLI MAJIROS, Individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>INTERSECTIONS INSURANCE SERVICES INC., an Illinois corporation, and OCWEN LOAN SERVICING, LLC, a Delaware corporation,<br><br>Defendants. | No. 13 C 7133<br>Judge James B. Zagel |

### MEMORANDUM OPINION AND ORDER

Plaintiffs Mark Wolfkiel and Kelli Majiros brought a class action complaint against Defendants Ocwen Loan Servicing ("Ocwen") and Intersections Insurance Services ("Intersection") for making unsolicited phone calls in violation of the Telephone Consumer Protection Act ("TCPA"). 47 U.S.C. § 227 *et seq*. Defendants filed a motion to dismiss Plaintiff Majiros' claim and to strike all class allegations. Fed. R. Civ. P. 12(b)(6), 12(f). For the following reasons, Defendants' motion to dismiss is granted, and the motion to strike is granted in part and denied in part.

### BACKGROUND

The facts are taken as true from Plaintiffs' allegations in the First Amended Class Action Complaint ("Complaint"). Plaintiffs Wolfkiel and Majiros are individuals whose mortgages are serviced by Defendant Ocwen. Plaintiffs received unsolicited marketing phone calls from Defendants. Plaintiffs allege that these calls were made in violation of the TCPA.

1

Wolfkiel's mortgage was transferred to Ocwen in 2012. He began to receive phone calls to his cellular phone in March 2012. He did not answer the calls at first, but later in April 2012, he called the number to inquire about the source and reason for the calls. The phone number led to Defendant Ocwen. Wolfkiel was told that the purpose of the calls was to offer him Intersection's identity theft membership service. As Wolfkiel had no interest in the offered service, he told the telemarketer that he did not wish to receive any more telemarketing calls. Despite his request, Plaintiff Wolfkiel continued to receive calls from the same number. Wolfkiel spoke to the telemarketers again in June and December of 2012 and indicated that he was not interested and requested that he no longer receive the calls. Plaintiff Wolfkiel alleges that he never consented to receiving telemarketing calls from Ocwen or Intersection, and in any case, he should not have received more calls after he made a request to stop such calls.

Majiros received unsolicited phone calls from Defendant Intersection to her landline, which has been listed on the National Do Not Call Registry since August 2010. Majiros' mortgage was transferred to Ocwen in March 2013. She began to receive calls in July 2013. The caller ID indicated that the caller was "Intersection In," which she alleges was Defendant Intersection.

On August 1, 2013, Majiros answered the phone and demanded that the caller cease calling her. She also informed the caller that the number was registered on the National Do Not Call Registry. She received more calls the next day and this time was told by the telemarketer that the purpose of the calls was to sell "Ocwen's Optional Medical Discount Program." The telemarketer provided Majiros with a phone number which she could call to find out more about the medical discount program. This number was different from the number Majiros identified with the caller ID.

Majiros alleges that the number the telemarketer gave her is associated with a website registered to Intersections Inc., which is the parent company of Defendant Intersections Insurances. According to the website Plaintiff Majiros visited, Intersections Insurance Services sells healthcare discount services named "AdvantageCare Plus," "in cooperation with many large banks, mortgage companies, and other financial institutions." Majiros also alleges that she never consented to receiving telemarketing calls from either Defendant.

## DISCUSSION

Defendants now move to dismiss Plaintiff Majiros' claim on the grounds that she cannot state a valid TCPA claim because she had an existing business relationship with Defendant Ocwen. Defendants also move to strike Plaintiffs' class allegations. I will address the two motions in turn.

### I. Motion to Dismiss Plaintiff Majiros' Claim

When considering a motion to dismiss under Rule 12(b)(6), the court accepts all well-pled allegations as true and construes all reasonable inferences in favor of the plaintiff. *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009). A plaintiff need not allege all facts involved in a claim. *See Sanjuan v. Am. Bd. Of Psychiatry & Neurology, Inc.* 40 F.3d 247, 251 (7th Cir. 1994). However, in order to survive a motion to dismiss for failure to state a claim, the claim must be supported by facts that, if taken as true, at least plausibly suggest that the plaintiff is entitled to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007). The complaint must contain sufficient factual matter to state a claim, and raise a right to relief above a speculative level. *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 622 (7th Cir. 2012) (quoting *Twombly*, 550 U.S., at 555); *E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007).

TCPA provides grounds for private action if a person has "received more than one telephone call within any 12-month period by the same entity in violation of the regulations prescribed under [the TCPA]." 47 U.S.C §227(c)(5). The applicable federal regulation is found in 47 C.F.R. § 64.1200, which provides, "[n]o person or entity shall initiate any telephone solicitation to... a residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry. 47 C.F.R. § 64.1200(c)(ii). The regulations, however, do not prohibit calls to persons with whom the seller has an "established business relationship," unless the recipient has previously made a specific do-not-call request to the caller. *See* 47 C.F.R. § 64.1200(f)(5)(i), (f)(14)(ii).

The current rules define the term "established business relationship" ("EBR") as "a... relationship... on the basis of an inquiry, application, purchase or transaction by the [recipient]." 47 C.F.R. § 64.1200(f)(5). The Federal Communications Commission ("FCC") has explained that financial transactions, including mortgages, qualify as established business relationships. 20 F.C.C.R. 3788, ¶ 26 (F.C.C. 2005). The seller is entitled to call a consumer based on its EBR with a customer. 18 F.C.C.R. 14014, ¶ 118 (F.C.C. 2003). The EBR may extend to third parties in limited cases. For example, where a company hires third-party telemarketers to market its own services and products, the telemarketers may rely on the seller's EBR to call an individual consumer. *Id*. at ¶ 116. However, it does not extend to marketing partners for purposes of telemarketing joint offers, to the extent that "partner" companies have no EBR with the customer. *Id*. at ¶ 118. The FCC has not defined what "partner companies" are or what constitutes "telemarketing joint offers."

Given that companies often offer a wide variety of services and products, the FCC does not restrict the EBR exemption by product. *Id*. at ¶ 116. ("Many [companies]... market products

4

and services in packages. As long as the company identifies itself adequately, a consumer should not be surprised to receive a telemarketing call from that company, regardless of the product being offered."). If the consumer does not want any further calls from that company, he or she may request placement on the company's do-not-call list. *Id*. Once the recipient makes a do-not-call request, the caller must honor it within a reasonable time, not exceeding thirty days, from the date such request is made. 47 C.F.R. § 64.1200(d)(3).

The parties here do not dispute that Majiros has an established relationship with Ocwen. The question is whether Intersection was in fact a telemarketer calling on Ocwen's behalf, or whether Ocwen and Intersection were "partners engaged in a joint telemarketing effort." Majiros appears to ask the court to conclude that the Medical Discount Program was not Ocwen's product, and Defendants were jointly marketing Intersection's products to Ocwen's customers. If that were true, the EBR exemption would not extend to the calls Intersection made.

In support of these allegations, however, Majiros provides little more than conclusory statements. The Complaint states that Defendants "engage in joint telemarketing efforts," and "act in direct concert to solicit new customers." Plaintiffs also allege that Intersection calls Ocwen's consumers claiming to sell Ocwen's product, which is a "deceptive tactic... utilized to gain the trust of the call recipient." Majiros claims that Intersection was the caller, and that the phone number she was given to call regarding Ocwen's Optional Medical Discount Program leads to a website that is registered to Intersection's parent company.

In my view, these allegations do not contain sufficient factual matter to raise Majiros' right to relief above the speculative level. *See Twombly*, 550 U.S. at 554; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is, of course, *conceivable* that Ocwen and Intersection are in a joint telemarketing effort, where Intersection is selling its products to Ocwen's customer base.

5

However, conceivability is not the bar Majiros must meet. *See Twombly*, 550 U.S. at 570 ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.").

The Complaint lacks any factual support that Ocwen was not the seller of the medical discount program, other than that Intersection made the calls and gave her a number which is associated with Intersection's website. Those facts establish only that Intersection made and received phone calls regarding the medical discount program. They do not suggest that Intersection was the real seller contacting Ocwen's customers to market Intersection's product. Plaintiffs' other allegations regarding the joint marketing efforts are conclusory and without factual support.

If Intersection was in fact acting on behalf of Ocwen, Majiros' request made to the telemarketer was honored within a reasonable time. Plaintiffs are right to say that the grace period for honoring a specific do-not-call request is not *per se* thirty days. 47 C.F.R. § 64.1200(d)(3). However, federal regulations do allow for *some* grace period rather than require an immediate stop. *Id*. Majiros made the request on August 1, 2013. There are no allegations in the Complaint that Majiros received any telemarketing calls from Defendants after August 2, 2013. One day is a reasonable grace period.

Because the Complaint does not adequately allege that the calls fell outside of the EBR exemption and the do-not-call request was honored within a reasonable time, Plaintiff Majiros' claim is dismissed. Consequently, Majiros' class allegations regarding the "Do-Not-Call Registry Class" is also dismissed.

## II.     Motion to Strike Plaintiff Wolfkiel's Class Allegations

Plaintiff Wolfkiel brings this action on behalf of two putative classes. The Revocation

class is defined as:

> All individuals in the United States (1) whose mortgage is held or serviced by Defendant Ocwen; (2) who received a telephone call; (3) on a cellular telephone number; (4) promoting Defendant Intersections' products or services; (5) who expressly requested that he or she no longer receive telemarketing calls promoting Defendant Intersections' product or services; and (6) thereafter received an additional telephone call to his or her cellular telephone promoting Defendant Intersections' products or services.

The No-Consent Class is defined as:

> All individuals in the United States (1) whose mortgage is held or serviced by Defendant Ocwen; (2) who received a telephone call; (3) on a cellular telephone number; (4) promoting Defendant Intersections' products or services; (5) who never consented to receive telemarketing calls promoting Defendant Intersections' products or services.

Pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, the court can strike "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Generally, motions to strike are disfavored because they "potentially serve only to delay." *Heller Fin., Inc. v. Midwhey Powder Co.,* 883 F.2d 1286, 1294 (7th Cir.1989). In some cases, however, a motion to strike "remove[s] unnecessary clutter from the case, [and] serve to expedite, not delay." *Id.*

Consistent with Rule 23(c)(1)(A), a court may deny class certification at "an early practicable time," even before the plaintiff files a motion requesting certification. *Kasalo v. Harris & Harris*, 656 F.3d 557, 563 (7th Cir. 2011). Particularly when pleadings "are facially defective and definitively establish that a class action cannot be maintained," the court can properly grant a motion to strike class allegations at the pleading stage. *Wright v. Family Dollar, Inc.,* 2010 WL 4962838, at *1 (N.D. Ill. 2010). Plaintiffs have not yet filed a motion for class certification. Accordingly, my review is limited to whether the class allegations in the Complaint are facially and inherently defective to establish a class action.

Federal Rules of Civil Procedure Rule 23(a) contains four prerequisites for class

7

certification: numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a); Wal-Mart Stores, Inc. v. Dukes, ____U.S.___, 131 S. Ct. 2541, 2550 (2011). A plaintiff seeking class certification has the burden proving that the proposed class meets the four requirements. *Oshana v. Coca–Cola Co.,* 472 F.3d 506, 513 (7th Cir. 2006). Failure to satisfy even one of these elements precludes class certification. *Harriston v. Chicago Tribune Co.,* 992 F.2d 697, 703 (7th Cir.1993). After the plaintiff has passed the initial Rule 23(a) threshold, the plaintiff must satisfy one of the conditions of Rule 23(b) in order to gain class certification. *Szabo v. Bridgeport Machines, Inc.,* 249 F.3d 672, 676 (7th Cir. 2001).

Plaintiffs bring the action under both Rules 23(b)(2) and Rules 23(b)(3). FAC, ¶ 42. I will discuss these two rules in turn.

**A. Rule 23(b)(2)**

Rule 23(b)(2) is not applicable here as this case does not fall under the type of class actions that the Rule allows. Class actions can be brought under Rule 23(b)(2) if the main relief sought is injunctive or declaratory, and the damages are only "incidental," the suit can be maintained under Rule 23(b)(2). *In re Allstate Ins. Co.*, 400 F.3d 505, 507 (7th Cir. 2005) (holding that Rule 23(b)(2) class actions are limited to cases in which final injunctive relief is appropriate, rather than extending to all cases in which any kind of equitable relief is sought).

Plaintiffs bring this action under the TCPA, which provides for statutory damages for every violation of the Act. In cases such as this one, "the monetary tail would be wagging the injunction dog." *Allstate*, 400 F.3d, at 507. An injunction is not a final remedy in cases such as this, where the injunction merely lays an evidentiary foundation for subsequent determinations of liability. *Kartman v. State Farm Mutual Auto. Ins. Co.,* 634 F.3d 883, 893 (7th Cir. 2011). Thus, Plaintiffs' class allegations in regards to Rule 23(b)(2) are stricken.

8

**B. Rule 23(b)(3) and the Revocation Class**

Plaintiffs also bring the class action under Rule 23(b)(3). Rule 23(b)(3) permits class certification only if the questions of law or fact common to class members predominate over questions that are individual to members of the class. *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 814 (7th Cir. 2012). While similar to Rule 23(a)'s requirements for typicality and commonality, the predominance criterion is far more demanding. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Rule 23(b)(3)'s predominance requirement is satisfied when common questions represent a significant aspect of a case and can be resolved for all class members in a single adjudication. *Messner,* 669 F.3d at 815. If the members of a proposed class will need to present evidence that varies from member to member to make a prima facie showing on a given question, then it is an individual question. *Id*. If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question. *Id*.

The party seeking class certification must provide a workable class definition by showing that the members of the class are identifiable. *See Oshana,* 472 F.3d at 513. Although the Seventh Circuit has not addressed the issue in the TCPA context, courts within this district agree that reference to objective criteria and reference to the defendant's conduct can provide the basis for identifying members of the class. *See Saf–T–Gard Int'l v. Wagener Equities,* 251 F.R.D. 312, 315 (N.D. Ill. 2008); *Hinman v. M and M Rental Center,* 545 F.Supp.2d 802, 805–06 (N.D. Ill. 2008).

The Revocation Class fails to satisfy the predominance requirement. In order to determine whether each potential class member did in fact revoke his or her prior consent at the pertinent time, the Court would have to conduct class-member-specific inquiries for each

individual. The class members would not be able to present "the same evidence [that] will suffice for each member to make a prima facie showing" that the recipients of Defendants' telemarketing calls had validly revoked his or her prior consent. *See Messner*, 669 F.3d at 815. Thus, the individualized inquiries would inevitably predominate over the common questions of fact. Despite the fact that there have been more TCPA suits heard in this district than in any other district nationwide, I have not found, and Plaintiffs have not provided me with, any class action based on the revocation of prior consent.

As the Revocation Class fails to meet the predominance requirement under Rule 23(b)(3), the class allegations regarding the Revocation Class are stricken.

**C. The No-Consent Class**

Defendants allege that the proposed class definitions are "fail-safe classes" and thus are inherently flawed. Because the Do-Not-Call-Registry Class allegations are dismissed from the Complaint with Plaintiff Majiros' claim, and the Revocation Class allegations are stricken from the Complaint, the only remaining class allegations are those for the No-Consent Class.

A class is "fail-safe" when it is defined such that whether a person qualifies as a member of the class depends on whether the person has a valid claim. *Messner*, 669 F.3d at 825. A fail-safe class includes *only* those who are entitled to relief, and is improper because "a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment." *Id.*; *see also Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012).

I am not yet persuaded that the No-Consent Class qualifies as a fail-safe class. It is not clear to me that this class definition creates a situation where membership in the class is dependent upon the validity of a putative member's claim. More importantly, it is not a basis on which to strike Plaintiff's class allegations prior to the certification stage. *See Messner*, 669 F.3d

10

at 825 ("[the fail-safe problem] can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis.").

Defendant also asserts that the No-Consent Class will require a multitude of "mini-trials" to determine the issue of consent for each individual putative class member. Again, the key question here is whether "the same evidence will suffice for each member to make a prima facie showing" as to consent. *See Messner*, 669 F.3d at 815. Although I have held that the Revocation Class fails to satisfy this test, that is not to say that all TCPA claims based on the lack of consent are precluded from class certification. Courts have held, for example, that the issue of individual consent could be addressed on a class-wide basis where the source of the contact information for all of the recipients of unwanted faxes was a single "leads" list compiled by a third party. *See Hinman v. M & M Rental Ctr.*, 545 F. Supp. 2d 802, 806–07 (N.D. Ill. 2008); *Green v. Serv. Master On Location Servs.*, 2009 WL 1810769, at *2 (N.D. Ill. June 22, 2009).

Here, all of the putative class members purchased a product from one seller and then allegedly received calls from another seller about an entirely different product. At this stage of the proceeding, the inference that a consumer purchasing product A from company Y does not and would not on that basis consent to being solicited by company Z selling wholly unrelated product B is sufficient to overcome the problem of individual consent.

## CONCLUSION

For the foregoing reasons, Plaintiff Majiros' claim and the class allegations for the Do-Not-Call-Registry Class are dismissed. Plaintiff Wolfkiel's class allegations in regards to Fed. R. Civ. P. Rule 23(b)(2) and the Revocation Class are stricken. Defendant's motion to strike Wolfkiel's class allegations under Rule 23(b)(3) is denied.

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: March 5, 2014